UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIMOTHY DUNNE,<br><br>    Plaintiff,<br><br>    v.<br><br>QUANTUM RESIDENTIAL INC.,<br><br>    Defendant. | CASE NO. 3:23-cv-05535-DGE<br><br>ORDER ON AMENDED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION (DKT. NO. 34) |

This matter comes before the Court on Plaintiff's unopposed motion for preliminary approval of settlement and class certification. (Dkt. No. 34.) For the reasons discussed herein, Plaintiff's motion is GRANTED, with certain exceptions identified below.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**A. Litigation and Settlement**

On June 14, 2023, Plaintiff Timothy Dunne filed a class and collective action complaint in this Court to recover unpaid wages and other damages from Defendant Quantum Residential Inc. ("Quantum"). (Dkt. No. 1.) Plaintiff alleged violations of the Fair Labor Standards Act

("FLSA"), the Washington Minimum Wage Act ("WMWA"), the Washington Rebate Act ("WRA"), and the Washington Administrative Code ("WAC").  (*Id.* at 20–26.)

On December 13, 2023, the parties participated in a private mediation in Seattle.  (Dkt. No. 31-1 at 6.)  On December 15, 2023, the parties informed the Court that they had reached a settlement.  (Dkt. No. 27.)  On February 7, 2024, Plaintiff filed unopposed motions to amend his complaint and for preliminary approval of settlement and class certification.  (Dkt. Nos. 30, 31.)  On February 8, 2024, Plaintiff filed an amended motion for preliminary approval of the settlement and class certification.  (Dkt. No. 34.)

### B.  Proposed Settlement Terms

There are approximately 126 members[1] in the proposed settlement class, which includes all individuals who: (1) resided in Washington State or Oregon, (2) were employed by Defendant, (3) in the position of maintenance technician or maintenance manager, (4), and who were paid on an hourly rate, (5) at any time from June 14, 2020 to June 14, 2023.  (Dkt. No. 31-1 at 2.)

Participating class members shall be all Oregon class members who opt in and Washington class members who do not submit a written and valid opt out.  (*Id.* at 4.)  For purposes of the settlement, "opt in" refers to the process by which an Oregon class member who is only eligible by virtue of the FLSA submits a notice to the settlement administrator to include him or herself in the settlement.  (*Id.*)  "Opt out" refers to the process by which a Washington

---

[1] Plaintiff's motion identifies 124 individuals in the proposed settlement class, which is composed of approximately 48 Washington class members with Rule 23 claims regarding WMWA violations and up to 76 opt-in plaintiffs with claims regarding FLSA violations.  (Dkt. No. 34. at 1.)

ORDER ON AMENDED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION (DKT. NO. 34) - 2

class member submits a notice to the settlement administrator to exclude him or herself from the settlement. (*Id.* at 5.)

The total settlement amount is $150,000. (*Id.* at 3.) Out of this, the following payments will be made: (1) $5,000 to the named plaintiff as a service award, (2) $60,000 to cover the attorney fees of Plaintiff's counsel, and (3) $10,000 for settlement administrative costs. (*Id.* at 3–4.) After these payments are made, the remainder of the settlement funds will be available for distribution to the participating class members. (*Id.* at 7.)

If the settlement agreement is approved, class members will receive a letter notifying them of the settlement. (*Id.* at 9.) They will have the opportunity to submit a request for exclusion from the settlement or object to the settlement. (*Id.* at 10–13.) Class members who do not submit a request for exclusion will be issued checks and will release all wage and hour claims or causes of action arising from June 14, 2020 through June 14, 2023 and which arise out of or are related to the allegations in the complaint, including but not limited to those arising out of the FLSA and the WMWA. (*Id.* at 14–15.) Named Plaintiff will also release such wage and hour claims arising out of his employment with, treatment at, and separation from Defendant, as well as any claims regarding wages or compensation received from Defendant. (*Id.* at 13–14.) Named Plaintiff retains the right to pursue a claim for workers' compensation benefits. (*Id.*)

The parties have selected ILYM to administer the settlement; the duties of the settlement administrator are outlined in the settlement agreement. (Dkt. No. 34 at 7.) The cost of administration will be paid out of the settlement fund. (*Id.*)

II.   DISCUSSION

In the Ninth Circuit, judicial policy strongly favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). When parties reach a

settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### A. Class Certification

The parties ask the Court to certify a class for the purpose of implementing the terms of the settlement. (Dkt. No. 31-1 at 7.) The parties ask the Court to certify a Rule 23 class consisting of "[a]ll hourly, non-exempt Quantum maintenance workers who worked in Washington at any time between June 14, 2020 and June 14, 2023." (Dkt. No. 34 at 5.) The parties also ask the Court to certify an FLSA collective of "[a]ll hourly, non-exempt Quantum maintenance workers who worked for Quantum at any time between June 14, 2020 and June 14, 2023." (*Id.*)

       1. <u>Class Certification Under Rule 23(a)</u>

Upon a motion for proposed class settlement, courts must "certify the class for purposes of judgment on the proposal" and "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(b)(i-ii). Under Rule 23(a), a court may certify a class only if: (1) the class is so numerous joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) a representative party's claims or defenses are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

     *a. Numerosity*

A court may certify a class only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[n]o exact numerical cut-off is required[,] . . . numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Here, there are approximately 125 members in the proposed settlement class. (Dkt. No. 31-1 at 2.) Accordingly, the numerosity requirement is met.

     *b. Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have suffered a violation of the same provision of law." *Wal-Mart Store, Inc. v. Dukes*, 564 U.S. 338, 349–350 (2011) (cleaned up). "Their claims must depend on a common contention[.]" *Id*. at 350.

Plaintiff contends the commonality requirement is satisfied here because all the members of the proposed settlement class were denied overtime pay. (Dkt. No. 34 at 17.) Plaintiff further contends this case raises questions of law and fact common to the class, namely: whether Defendant had a policy of automatically deducting pay from the putative class members' meal breaks; whether the work performed by putative class members during their meal breaks was compensable under Washington law; and whether Defendant's alleged illegal pay practice applied to the class members. (*Id.*) Based on the allegations set forth in the complaint, the Court agrees, and finds the commonality requirement is met.

    c. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Maxwell v. Facebook, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quotations omitted). In other words, the question for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted).

Here, the named plaintiff, Timothy Dunne, is a Maintenance Technician at Defendant's residential communities in Washington, who regularly works more than 40 hours per week. (Dkt. No. 1 at 1.) Dunne's claims—that Defendant failed to pay him for all the hours he worked and required him to work off the clock during unpaid meal breaks—are identical to those of the absent class members. (*Id.* at 2.) Accordingly, the Court finds the requirement of typicality is met.

    d. *Adequacy of Representative Party*

Courts must consider whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating the adequacy requirement, the Court must consider: "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton*, 327 F.3d at 957.

Plaintiff argues the interests of named plaintiff and Plaintiff's counsel are aligned with those of the other class members "as they share an interest in recovering compensation for the wage and hour violations that Plaintiff alleges were suffered by the whole class." (Dkt. No. 34 at 18.) Plaintiff further argues the named plaintiff has been committed to his representation of the class throughout this litigation and has regularly communicated with counsel to provide information about his experience, accounts of other class members, and information critical to negotiation of the settlement. (*Id.*)

Here, the named plaintiff secured counsel with experience litigating class actions who appears to have vigorously pursued the claims. The Court finds no apparent conflict between the interests of the named plaintiff and the other class members, who are all maintenance workers setting forth similar claims concerning Defendant's policy regarding meal breaks. Thus, the requirement of adequacy is met.

Accordingly, the Court finds that the proposed class meets the requirements of Rule 23(a).

2. Class Certification Under Rule 23(b)

"Where a putative class satisfies all four requirements of Rule 23(a), it still must meet at least one of three additional requirements outlined in Rule 23(b) in order to be eligible for certification." *United Steel,* 593 F.3d at 806. Relevant here are the provisions of Rule 23(b)(3), which requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because commonality and predominance overlap, courts have considered these requirements together. *See e.g., Carlson v. Home Depot USA Inc.*, Case No. C20-1150 MJP, 2021 WL 4636858 at *6 (W.D. Wash. Oct. 7, 2021), citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."). For the reasons set forth above in connection with its analysis of the commonality requirement, the Court finds the predominance requirement of Rule 23(b)(3) is met.

As for the superiority requirement, the Court must consider the four factors set forth in Rule 23(b)(3): (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

The Court finds the superiority requirement has been met. First, this case involves relatively small claims for unpaid wages by the class members, who likely would not have an interest in individually controlling the prosecution of separate actions. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Second, the parties have not identified any litigation concerning this controversy already begun by the class members. Third, given that all the claims in this case arose in either Washington or Oregon, there is good reason for concentrating the litigation in this district. Finally, this case does not present any obvious difficulties with respect to managing the class action.

3. <u>Certification of FLSA Collective</u>

"Under the FLSA, employers must pay their employees a minimum wage and overtime wages for hours worked in excess of forty per week." *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013), citing 29 U.S.C. §§ 206, 207. "If an employer fails to do so, an aggrieved employee may bring a collective action on behalf of 'similarly situated' employees based on their employer's alleged violations of the FLSA. *Id.*, citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000).

It is "the near-universal practice" to evaluate the propriety of the collective mechanism—in particular, plaintiffs' satisfaction of the "similarly situated" requirement—by way of a two-step certification process. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). At the first step[2], made at the "notice stage", the district court "makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Buenaventura v. Champion Drywall, Inc. of Nev.*, Case No. 2:10–cv–00377–LDG (RJJ), 2012 WL 1032428, at *8 (D. Nev. Mar. 27, 2012) (internal citation omitted). "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)." *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1003 (N.D. Cal. 2010) (collecting cases). "Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the

---

[2] "At the second step—typically initiated by a motion to decertify after discovery is complete—the court engages in a more searching inquiry." *Tijero*, 301 F.R.D. at 323 n. 4. "Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).

ORDER ON AMENDED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION (DKT. NO. 34) - 9

absent class members." *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006).

For the reasons discussed above in connection with the commonality and predominance requirements of Rule 23, the Court finds the named plaintiff in this case is similarly situated to the other members of the proposed settlement class. It is therefore appropriate to certify the FLSA collective.

**B.  Settlement Approval**

1. <u>Rule 23</u>

The Court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B)(2). "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010). "At the final approval stage, the Court takes a closer look at the proposed settlement, taking into consideration objections and any other further developments in order to make a final fairness determination." *Id.*

Where the settling parties seek only preliminary approval "a full fairness analysis is not possible or necessary prior to the final fairness hearing." *Hunichen v. Atonomi LLC*, Case No. C19-0615-RAJ-SKV, 2021 WL 5854964 at * 4 (W.D. Wash. Nov. 12, 2021). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Alcala v. Meyer Logistics, Inc.*, Case No. C17-7211, 2019 WL 4452961, at *4 (C.D. Cal. June 17, 2019) (internal citations omitted).

*a. Settlement Negotiations*

"Where reached after meaningful discovery, arm's length negotiation, and conducted by capable, experienced counsel, a proposed class settlement is presumptively fair." *Hunichen*, 2021 WL 5854964 at * 5. "The involvement of an experienced mediator also supports a finding of fairness." *Id.* Here, Plaintiff was represented by capable attorneys with significant experience in wage-and-hour cases. (Dkt. No. 31-2 at 2–4.) An experienced mediator, Mike Reiss, participated in the settlement negotiations. (*Id.* at 5.) Prior to the mediation, the parties exchanged initial disclosures along with payroll and wage and hour information used to create a class-wide damage model. (Dkt. No. 34 at 4.)

When considering the settlement negotiations, factors tending to show that negotiations were not at arm's length can include: (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorney fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011). None of these factors are present in this case.

The Court finds no evidence of collusion and finds the settlement in this case was negotiated at arm's length.

### b. Obvious Deficiencies

The Court finds no obvious deficiencies in the proposed settlement. Notice to class members who may then provide objections will be a necessary component of final approval.

### c. Preferential Treatment

District courts must be "particularly vigilant" for signs that counsel has allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Notwithstanding, "named plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. The Court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id.* at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

Here, there is only one named plaintiff receiving a service award. The award, $5,000, is slightly more than 3% of the total settlement amount. After subtracting the service award, attorney fees, and administrative costs from the settlement amount, there is $75,000 remaining for payments to class members. Plaintiff asserts the recovery for individual class members is higher, approximately $714.29, with the maximum settlement payment being $2,274.49. (Dkt. No. 31-2 at 5.)

In addition, other courts in the Ninth Circuit have found that a $5,000 service award is often viewed as reasonable. *McDonald v. CP OpCo, LLC*, Case No. 17-CV-04915-HSG, 2019

1   WL 2088421 at * 7 (N.D. Cal. May 13, 2019) (finding a $5,000 service award was

2   "presumptively reasonable"); *Wong v. Arlo Techs., Inc.*, Case No. 5:19-cv-00372-BLF, 2021 WL

3   1531171 at *12 (N.D. Cal. Apr. 19, 2021) (same); *In re Infospace, Inc. Sec. Litig.*, 330 F. Supp.

4   2d 1203, 1216 (W.D. Wash. 2004) (approving service awards of $5,000 and $6,600). Based on

5   these facts, the Court finds no evidence the incentive payment in this case is excessive.

6          d.  *Range of Possible Approval*

7          In determining whether the Settlement Agreement falls within the range of possible

8   approval, the Court must focus on "substantive fairness and adequacy" and "consider [P]laintiffs'

9   expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F.

10  Supp. 2d at 1080. "[I]t is well-settled law that a proposed settlement may be acceptable even

11  though it amounts only to a fraction of the potential recovery that might be available to class

12  members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D.

13  Cal. 2004). The Court should examine "the complete package taken as a whole," and the amount

14  is "not to be judged against a hypothetical or speculative measure of what might have been

15  achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,

16  688 F.2d 615, 628 (9th Cir. 1982).

17         Plaintiff's counsel asserts there was a substantial risk that he would not prevail on the

18  merits if the case proceeded to trial. (Dkt. No. 31-2 at 5.) Plaintiff's estimated damages were

19  calculated "using Plaintiffs' actual pay records, and a good faith estimate of the quantity of

20  unpaid wages and number of overtime hours worked by Plaintiffs using punch-in/punch-out

21  records reflecting the hours worked by Dunne and the Putative Class Members." (*Id.*) Based on

22  these calculations, and after subtracting attorney fees and other costs, class members will recover

23

24

ORDER ON AMENDED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION (DKT. NO. 34) - 13

their back wage damages, assuming approximately 1.5 uncompensated meal breaks per work week.  (*Id.*)

Because it appears the putative class members will recover their unpaid wages, the Court finds the proposed settlement falls within the range of possible approval.

### 2. FLSA

"The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved."  *Richards v. Schoen Trust Company*, Case No. 2:22-cv-00878-TL, 2023 WL 2787219 at *1 (W.D. Wash. Apr. 5, 2023).  "However, district courts have applied the widely used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute."  *Wonderly v. Youngblood*, Case Nos. C16-1621, C16-1638, 2022 WL 378262, at *3 (E.D. Cal. Feb. 8, 2022).

For the reasons discussed above, *see supra*, Section II.B.1., the Court finds the settlement in this case represents a fair and reasonable resolution.  *See Nault v. DIRECTV*, LLC, Case No. C16-5721, 2021 WL 4318320, at *1 (C.D. Cal. Aug. 9, 2021) (analyzing the four factors discussed above when evaluating whether a settlement was fair and reasonable).  With respect to whether there was a "bona fide" dispute between the parties, Defendant's counsel "was ready, willing, and able to litigate this case to its conclusion" and "disagreed vehemently with many of the assertions in the Original Complaint and vowed to defend the pay practices at issue."  (Dkt. No. 31-2 at 5.)  The Court finds there is sufficient evidence of a bona fide dispute to approve the settlement with respect to the FLSA.

Accordingly, the Court finds the proposed settlement appropriate for preliminary approval.

### C. Approval of Class Counsel

Plaintiff asks the Court to appoint Michael Josephson and Carl A. Fitz of Josephson Dunlap, LLP, Richard Burch of Bruckner Burch PLLC, and Michael C. Subit of Frank Freed Subit & Thomas LLP as class counsel. (Dkt. No. 34 at 18–19.)

Factors the Court must consider when evaluating the adequacy of class counsel include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The attorneys and firms seeking to serve as class counsel have significant experience in wage-and-hour cases and collective and class actions. (Dkt. No. 31-2 at 2–4.) They also have extensive knowledge of the applicable law. (*Id.*) Fitz asserts he spent "considerable time" coordinating with and interviewing Plaintiff, "investigating the veracity of his allegations, looking into Defendant's business and payroll practices, researching the current law relating to overtime violations of the FLSA and Washington Minimum Wage Act involving uncompensated work performed during meal breaks, reviewing PACER filings, and drafting the complaint." (*Id.* at 4.) Based on these representations, the Court finds it appropriate to appoint Josephson, Fitz, Burch, and Submit as class counsel in this case.

### D. Approval of Settlement Notice Program

After the Court grants preliminary approval of a proposed settlement in a class action lawsuit, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Under Rule 23, notice may be given via United States mail, electronic means, or other appropriate means. *Id.* Here, notices well be sent via regular mail. (Dkt. No. 31-1 at 3.)

The notice language informs the class members, in plain language, of the nature of the action, the definition of the class certified, the class claims, and the ability of class members to have someone appear on their behalf at the final approval and fairness hearing. However, the notice does not specify that class members may enter an appearance through an attorney. (Dkt. No. 31-1 at 25–28.) The proposed notice also informs class members that they may exclude themselves from the settlement, will inform them of the time and manner for requesting exclusion, and explains the binding effect of a class judgment. (*Id.*)

However, notices of settlement must also comply with Rule 23(e) and comport with due process. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). A notice will be satisfactory when it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has found a notice sufficient in this respect when, inter alia, it stated the full amount of

the settlement fund; and the amount counsel would seek in fees, litigation expenses, and incentive awards. *In re Online DVD-Rental*, 779 F.3d at 946.

Here, the proposed notice does not include the full amount of the settlement fund, the amount sought in fees, or information about the $5,000 incentive award. Nor does the notice include the case name, the case number, or information about the court. *See Churchill Village*, 361 F.3d at 575 (finding a notice was satisfactory when it informed class members of the case name, case number, and the court in which the litigation was pending).

Further, under Rule 23(h), class members must also be given notice of the fee motion and an opportunity to object to that motion. "The plain text of the rule requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–994 (9th Cir. 2010). It is an abuse of discretion to set "the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion," because it "deprives objecting class members" of a meaningful opportunity to object to the fee motion. *Id.* at 993.

Here, the proposed notice fails to mention a motion for fees (Dkt. No. 31-1 at 25–34) and fails to mention that class members may object to the requested fees. (*Id.* at 26–27.) Nor does the notice include information about how and when class members will receive a copy of the attorney fee motion or a placeholder for a website where class members may view a copy of the fee motion.

Accordingly, the Court cannot find that the proposed notice to class members satisfies the requirements of Rule 23 or due process.

**E.  Attorney Fees**

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Mercury,* 618 F.3d at 992.  Because the benefit to the class is easily quantified in common-fund settlements, the Ninth Circuit has allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.  *In re Bluetooth*, 654 F.3d at 941–942.

Applying this method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure. *Id.* at 942.  Here, the parties propose using the percentage-of-recovery method, indicating class counsel will receive 40% of the gross settlement amount.  Plaintiff argues is a reasonable fee award, but provides no evidence of special circumstances that would justify a departure from the 25% benchmark.  (Dkt. No. 34 at 14.)

While substantially higher than the benchmark, the fee request may not be so out of bounds as to justify denying preliminary approval of the settlement.  The parties are directed to file a motion for attorney fees by the date that approved notices to class members are mailed.  The parties must also either mail a copy of the attorney fee motion to class members or upload a copy of the fee motion to a website established by the Settlement Administrator by the date that

approved notices to class members are mailed.  The parties should include an explanation of the special circumstances justifying a departure from the benchmark 25% award in the motion.

### III.   ORDER

Accordingly, with the exceptions discussed above, the Court hereby GRANTS Plaintiff's motion for approval of preliminary approval of the settlement and class certification.  (Dkt. No. 34.)  The Court will not enter Plaintiff's proposed order (Dkt. No. 32) given the deficiencies identified above with respect to notice.  The parties SHALL file a new proposed notice and a new proposed order that correct the deficiencies identified in this order no later than July 18, 2024.

The Court DEFERS the scheduling of a hearing on final approval of the proposed class action settlement until after the parties submit a proposed notice to class members that addresses the deficiencies identified in this order.

Plaintiff's unopposed motion for leave to amend his complaint (Dkt. No. 30) is GRANTED.

Dated this 18th day of June, 2024.



David G. Estudillo
United States District Judge